USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/14/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WESLEY JENKINS,

                Plaintiff,

-against-

THE TOWN OF GREENBURGH, DAVEY JAKASAL, STEPHEN ELLRODT, JOSEPH FIORE, FRANK FARINA, and ADAM HAMBLIN

                Defendants.

No. 13-cv-8845 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Wesley Jenkins bring this action against the Town of Greenburgh, Davey Jakasal, Stephen Ellrodt, Joseph Fiore, Frank Farina, and Adam Hamblin (collectively, "Defendants") pursuant to 42 U.S.C. § 1983 alleging claims of excessive force, deliberate indifference to medical needs, and supervisory liability in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff additionally asserts a common law claim for negligence. Before the Court is Defendants' motion for summary judgment. For the reasons set forth below, Defendants' motion is GRANTED.

## BACKGROUND

    The following facts, unless otherwise noted, are based on the undisputed facts in the matter or support Plaintiff's version of events.

    On the evening of August 31, 2012, Plaintiff, a 44-year-old male approximately "five-eleven, six" feet tall, was at his apartment at 2917 Grand Concourse in the Bronx with his friend, Jason Lopez. (Local Rule 56.1 Statement ("Defs.' 56.1") ¶¶ 1–2.) At approximately 9:00 p.m., Plaintiff and Lopez began consuming beer, snorting cocaine, and smoking marijuana and continued to do so for approximately five hours. (*Id.* ¶¶ 2–3.) The next morning (September 1),

at approximately 8:30 a.m., Plaintiff and Lopez walked down to 180th Street where they observed a man driving his car looking for drugs. (*Id*. ¶ 4.) Plaintiff and Lopez got in the man's vehicle to take him to a "drug hotel," but there was no one selling drugs. (*Id*. ¶ 5.) The man then gave Plaintiff and Lopez the keys to his 2007 Toyota Camry (the "Camry"), as well as money, so that Plaintiff and Lopez could purchase drugs for the man. (*Id*.) Neither Lopez nor Plaintiff intended to purchase drugs for the man; instead, they took the $20 and drove the Camry to Westchester County. (*Id*. ¶ 6.) Though Plaintiff was feeling the effects of the alcohol a little bit, he testified that he was "comprehensive." (Plaintiff's Response to Defendants' Local Rule 56.1 Statement of Facts ("Pl.'s 56.1") ¶ 6.)

Plaintiff and Lopez drove the Camry for 30 to 45 minutes until they reached a Bed Bath & Beyond in Westchester County. (Defs.' 56.1 ¶ 7.) Plaintiff stayed in the Camry while Lopez went into the Bed Bath & Beyond to steal cosmetics. (*Id*.) Plaintiff and Lopez intended to drive back to the Bronx or Manhattan to sell the stolen cosmetics. (*Id*. ¶ 8.) While driving, Plaintiff and Lopez passed a Greenburgh police car driven by Police Officer Stephen Ellrodt. (*Id*. ¶¶ 9–10.) The license plate reader in Officer Ellrodt's police car registered the Camry as a stolen vehicle. (*Id*. ¶ 10.) Officer Ellrodt turn on his car's siren, which automatically activated the car camcorder video, and drove up behind the Camry. (*Id*. ¶ 11.)

Sometime after 11:00 a.m. on September 1, Police Officer Davey Jakasal, while conversing with Officer John Roberts, heard a radio transmission from Officer Ellrodt that he was pulling over a vehicle. (*Id*. 12.) Both Officer Jakasal and Officer Roberts ran the license plate of the vehicle referenced by Officer Ellrodt and discovered it was stolen. (*Id*.) The officers then drove towards Tarrytown Road where Officer Ellrodt had stopped the stolen vehicle. (*Id*.)

After being pulled over by Officer Ellrodt, Plaintiff told Lopez that they were "getting ready to go to jail" and that he was going to take Officer Ellrodt on a "high speed chase." (*Id.* ¶ 13.) Though Plaintiff acknowledged he could kill someone, he took off in the Camry. (*Id.* ¶ 14.) Officer Ellrodt's vehicle drove after the Camry, followed by the Officer Jakasal's vehicle. (*Id.* ¶ 15.) The Camry then crossed the center cement median in the road, entering oncoming traffic. (*Id.*) Officer Jakasal's vehicle followed the Camry across the median. (*Id.* ¶ 19.) The Camry then crossed back over the concrete median, fleeing the police at over 55 miles per hour. (*Id.* ¶ 20.) When the Camry reached the on-ramp for the Bronx River Parkway, Plaintiff pulled the car over because he had run out of gas. (*Id.* ¶¶ 22–23.) Without putting the Camry in park, Plaintiff jumped out of the car and ran toward a wooded area. (*Id.* ¶ 25.) Officer Roberts directed Lopez to get out of the car, at which time he took him into custody. (*Id.* ¶ 26.)

According to Plaintiff, Officer Jakasal almost hit Plaintiff with his car as he drove up near him. (Pl.'s 56.1 ¶ 27.) When he was about five feet from Plaintiff, Officer Jakasal yelled at him to "get on the fucking ground." (Defs.' 56.1 ¶ 28(a).)[1] Plaintiff continued to run into the woods, and Officer Jakasal pursued him on foot with his PR-24 baton. (*Id.* ¶ 28(b).) Officer Jakasal repeatedly shouted at Plaintiff to stop running. (*Id.* ¶ 30.) While Plaintiff was running, he felt Officer Jakasal strike him from behind with what he believed to be a stick or a baton. (*Id.* ¶ 31.) Plaintiff told Officer Jakasal, "[o]w, you just hit me." (*Id.*)

After handcuffing Lopez and searching the Camry, Officer Ellrodt ran into the woods after Officer Jakasal and Plaintiff. (*Id.* ¶ 32.) Meanwhile, Plaintiff ran through the woods until he reached a sidewalk located on Chatterton Parkway in White Plains. (*Id.* ¶ 33(a).) Plaintiff

---

[1] As Plaintiff correctly notes, Defendants' Rule 56.1 Statement contains two paragraphs numbered 28, 33, and 39. The Court will refer to the first paragraph 28, 33, and 39 as 28(a), 33(a), and 39(a), respectively, and the second paragraph 28, 33, and 39 as 28(b), 33(b), and 39(b), respectively.

observed a number of police officers, police vehicles, and dogs, so he "got down" on the sidewalk, announcing that he had given up. (*Id.* ¶ 33(b).) Plaintiff was face down on the sidewalk with his hands covering his face and head when he alleges that police officers began to kick him and hit him with sticks. (*Id.* ¶ 34.) While Plaintiff was still lying down on the sidewalk and prior to being handcuffed, Plaintiff was struck 3-4 times on the base of his left thumb but could not identify exactly which officers struck him. (*Id.* ¶ 35.) Officer Ellrodt then rolled Plaintiff to his side and patted him down for weapons. (*Id.* ¶ 36.)

Meanwhile, Paramedic Adam Hamblin, a police officer and paramedic employed by the town of Greenburgh, was on a routine patrol on September 1, 2012 when he heard a call regarding the car chase involving Plaintiff. (*Id.* ¶ 37.) Paramedic Hamblin then drove to Chatterton Parkway, where he observed numerous police officers and Plaintiff sitting upright complaining of pain. (*Id.* ¶ 38.) Plaintiff remained handcuffed on the sidewalk for 15-20 minutes and consistently shouted for medical attention. (*Id.* ¶ 39(a).) During this time, Paramedic Hamblin spoke to Plaintiff to ensure he did not have a life threatening condition, performed a preliminary assessment, determined that Plaintiff was alert, and inquired as to his complaints. (*Id.* ¶ 39(b).) Plaintiff complained of pain to his left arm, and Paramedic Hamblin observed swelling at the proximal region of Plaintiff's humerus. (*Id.* ¶ 40.) Paramedic Hamblin relieved the pain somewhat by repositioning Plaintiff's handcuffs, but Plaintiff continued to yell. (*Id.*) Paramedic Hamblin prepared a Pre-Hospital Care Report ("PCR") outlining his observations of and interactions with Plaintiff. (*Id.* ¶ 41.)

During the time Plaintiff was handcuffed, Police Officer Joseph Fiore observed Plaintiff as well as police officers of the Town of Greenburgh and the City of White Plains. (*Id.* ¶ 43.) Eventually, Officer Ellrodt placed Plaintiff in the back of Officer Fiore's police car. (*Id.* ¶ 44.)

Plaintiff complained that his arm was broken.  (*Id*.)  Lieutenant Frank Farina, a supervisor, arrived at the scene and, after some discussion with Paramedic Hamblin, determined that Plaintiff should be transported to the closest hospital via police car rather than an ambulance.  (Pl.'s 56.1 ¶¶ 45–46.)  Paramedic Hamblin determined that transporting Plaintiff in a police car rather than an ambulance would not affect Plaintiff's injuries.  (Defs.' 56.1 ¶ 47.)  Approximately 30 minutes later, Plaintiff was transported to White Plains Hospital.  (*Id*. ¶ 48.)  At White Plains Hospital, Plaintiff was examined by a physician (or physician's assistant) in the emergency room and complained that he had pain in his elbow and thumb.  (*Id*. ¶ 49.)  Plaintiff was informed that his right arm was fractured; however, the hospital record notes that Plaintiff had a "right elbow contusion" only.  (*Id*. ¶ 50; Defendants' Exhibit E.)

Subsequently, Plaintiff was transported to the Greenburgh Police Headquarters where he was photographed and fingerprinted.  (Defs.' 56.1 ¶ 54.)  Plaintiff's right arm was in a sling.  (*Id*.)  Officer Ellrodt prepared a UF-32 police report using some information conveyed by Officer Jakasal.  (*Id*. ¶ 55.)  Several hours later, Plaintiff was brought to the Westchester County Jail (the "Jail") and, following intake, went to the infirmary.  (*Id*. ¶ 56.)  An officer provided the infirmary with paperwork from the White Plains Hospital.  (*Id*.)  Nurse Michele Russo examined Plaintiff at the infirmary and asked him a series of questions.  (*Id*. ¶¶ 57, 59.)  Plaintiff informed Ms. Russo that he broke his elbow and had shin abrasions, which she recorded on the Infirmary Admission Record.  (*Id*. ¶ 61; Defendants' Exhibit H.)  Plaintiff testified in his deposition that he believes he also made complaints to Ms. Russo about pain in his left thumb.  (Pl.'s 56.1 ¶ 61.)  Additionally, Plaintiff denied ever telling Ms. Russo that he sustained his injuries while he fell evading the police.  (*Id*. ¶ 62.)

On September 5, 2012, an x-ray was taken of Plaintiff's right elbow, which revealed no signs of a fracture. (Defs.' 56.1 ¶ 66.) A September 25, 2012 report from White Plains Radiology Associates detailed that there had been a "partial amputation of the left second digit" on Plaintiff's hand. (*Id.* ¶ 67; Defendants' Exhibit K.) Plaintiff then spent some time in the general population of the Jail and returned to the infirmary on December 17, 2012. (Defs.' 56.1 ¶ 68.) On December 18, 2012, Plaintiff had surgery on his left thumb and remained in the infirmary for three to five days before he returned to the Jail's general population. (*Id.* ¶ 69.) Plaintiff pled guilty in Westchester County Court to the class D Felony of Criminal Possession of Stolen Property and was sentenced on February 24, 2013 to a term of imprisonment of two to four years. (*Id.* ¶ 70.)

Based on his review of Plaintiff's medical records and radiological films, Dr. Roy Kulick concluded in a narrative medical report dated January 1, 2015 that Plaintiff's injury to the right elbow was not a fracture and that the previous diagnosis of a fracture was "more than likely a paperwork error." (*Id.* ¶ 73; Defendants' Exhibit N.) Additionally, Dr. Kulick noted that it would be "very unusual" for Plaintiff's injury to his left thumb—a rupture of the ulnar collateral ligament—to be caused by direct trauma. (*Id.*) He added that such injury is usually the result of falling on the hand. (*Id.*) On April 27, 2015, Dr. Kulick opined that Plaintiff sustained only a contusion to his right elbow (i.e., bruising), which does not require medical treatment. (Defs.' 56.1 ¶ 71; Defendants' Exhibit O.) He further concluded that the ruptured ulnar collateral ligament (left thumb injury) was caused not by blunt trauma, such as a police baton, but rather by the abduction of his left thumb, which can happen when a person falls onto an outstretched hand. (*Id.*)

**STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation and quotation marks omitted). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted). In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250.

Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999). The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted). Moreover, "[a non-moving party's] self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment." *Fincher v. Depository Trust & Clearing Corp.*, No. 06 Cv. 9959 (WHP), 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008) *aff'd*, 604 F.3d 712 (2d Cir. 2010) (citing *Gonzales v. Beth Israel Med. Ctr.*, 262 F. Supp. 2d 342, 353 (S.D.N.Y. 2003)).

## DISCUSSION

### I. Excessive Force

Plaintiff alleges two instances of excessive force: (1) Officer Jakasal striking Plaintiff with a baton on his right elbow as Officer Jakasal chased Plaintiff through the woods, and (2) Officer Jakasal and Officer Ellrodt striking Plaintiff with batons when Plaintiff was lying face-down on the sidewalk.[2] Plaintiff's claim of excessive force during his arrest is reviewed under an "objectively reasonable" standard. *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Bowles v. New York*, 37 F. Supp. 2d 608, 612 (S.D.N.Y. 1999). The question for the Court is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting

---

[2] For ease of reference, the Court will refer to the first instance as the "First Strike" and the second instance as the "Second Strike," even though the record reflects that Plaintiff was struck multiple times during the Second Strike.

them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. "Not every push or shove by a state officer constitutes a violation of substantive due process." *Robinson v. Via*, 821 F.2d 913, 923 (2d Cir. 1987). "Whether the constitutional line has been crossed depends on 'such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Via*, 821 F.2d at 923 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973), *cert. denied,* 414 U.S. 1033, 94 S. Ct. 462, 38 L.Ed.2d 324 (1973)). "[T]o prevail on a motion for summary judgment in an excessive force case, the evidence must show that 'no rational jury could [find] that the force used was so excessive that no reasonable officer would have made the same choice.'" *Smith v. Fields*, No. 95-cv-8374 (DAB), 2002 WL 342620, at *3 (S.D.N.Y. Mar. 4, 2002) (quoting *Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995)).

### A. The First Strike

The Court first will examine whether it was objectively reasonable for Officer Jakasal to strike Plaintiff with a baton in the woods. Defendants assert that Officer Jakasal's use of the baton was reasonable in light of Plaintiff's flight and resistance to arrest during both a high-speed car chase and subsequent on-foot pursuit. (Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defs.' Mot.") at 3–6.) Though an officer does not have unfettered discretion to employ any means of force to detain an individual that resists arrest, an officer is undoubtedly permitted to employ "*some* degree of force." *Sullivan v. Gagnier*, 225 F.3d 161, 165–66 (2d Cir. 2000). *See also Kalfus v. New York & Presbyterian Hosp.*, 476 F. App'x 877, 880–81 (2d Cir. 2012) (upholding grant of summary judgment on excessive force

claim where patrolmen used "only reasonable force"—turning plaintiff onto his stomach, pulling plaintiff's hands behind his back, and handcuffing plaintiff—"to overcome [plaintiff's] resistance"). The indisputable evidence reflects that Plaintiff evaded Officer Ellrodt in a stolen vehicle, the Camry, thereby initiating a police pursuit; drove the Camry in the opposite direction of traffic, endangering the general public; exited the Camry without putting the car in park; and ran towards a wooded area. (Defs.' 56.1 ¶¶ 13–15, 25.) The records further illustrates that Officer Jakasal attempted to use the least minimal force—verbal commands—to direct Plaintiff to stop fleeing prior to resorting to use of his baton. (*Id.* ¶ 30.) Officer Jakasal, at least initially, was the only member of law enforcement involving in pursuing Plaintiff in the woods. (*Id.* ¶ 28(b).) The Court further notes that Plaintiff sustained a relatively minor injury—bruising to his right elbow—as a result of being struck with a baton by Officer Jakasal. (*Id.* ¶ 71.) In light of these circumstances and mindful of the fact that it must "evaluate the record '"from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight[,]"'" *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (quoting *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (quoting *Graham*, 490 U.S. at 396)) the Court finds that it was objectively reasonable for Officer Jakasal to strike Plaintiff with his baton in attempting to apprehend Plaintiff.

### B. The Second Strike

The Court next turns to the issue of whether Plaintiff can maintain an excessive force claim with respect to the Second Strike. Defendants argue that they are entitled to summary judgment because "there is no admissible evidence that the force employed by Officer Jakasal and Officer Ellrodt, in striking [Plaintiff] with their batons at the base of his left thumb—accepted as true for purposes of this motion—caused any injury, alleged to have been a torn

ligament requiring surgery." (Defs.' Mot. at 13.) "To defeat a properly supported motion for summary judgment, the non-moving party must come forth with 'significant probative evidence' demonstrating that a factual dispute does in fact exist." *Phelps v. Szubinski*, 557 F. Supp. 2d 650, 662 (E.D.N.Y. 2008) (quoting *Anderson*, 477 U.S. at 249). The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC*, 607 F.3d at 292 (internal citation and quotation marks omitted). Moreover, as stated *supra*, a self-serving statement absent "direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment." *Fincher*, 2008 WL 4308126, at *3. Even drawing all of the inferences and construing the evidence in favor of Plaintiff, the Court finds that Plaintiff has failed to advance "evidence which would permit a reasonable trier of fact to conclude that the force employed by" Officers Jakasal and Ellrodt "in effecting [P]laintiff's arrest caused [P]laintiff's injury . . . ." *Phelps*, 557 F. Supp. 2d at 662.

"[W]here undisputed medical records *directly and irrefutably* contradict a plaintiff's description of his injuries, no reasonable jury could credit plaintiff's account of the happening." *Davis v. Klein*, No. 11-cv-4868 (ENV), 2013 WL 5780475, at *4 (E.D.N.Y. Oct. 25, 2013) (citing *Bove v. City of New York*, 1999 WL 595620, at *6 (S.D.N.Y. 1999)). In the instant action, the medical record from White Plains Hospital—the hospital where Plaintiff was examined the night he was arrested—reflects an injury to Plaintiff's right elbow and makes no mention of injuries to Plaintiff's left thumb. (Defs.' 56.1 ¶ 50; Defendants' Exhibit E.) Additionally, Ms. Russo's Infirmary Admission Report notes only that Plaintiff broke his elbow and had skin abrasions. (Defs.' 56.1 ¶ 61; Defendants' Exhibit H.) Based upon the Court's review of the record, it appears that the only admissible evidence supportive of Plaintiff's claim that he injured his left thumb is his own deposition testimony (Pl.'s 56.1 ¶ 61.) Plaintiff has not

pointed the Court towards any additional evidence, such as a medical opinion, medical records, or a physician's expert report, supportive of Plaintiff's contention that the force employed by Officers Jakasal and Ellrodt caused injuries to his left thumb. In sum, "the record is utterly devoid of evidence of any kind supporting [Plaintiff's] description of his injuries—other than his own claims." *Davis*, 2013 WL 5780475, at *4 (citing *Bove*, 1999 WL 595620, at *6 ("There are no affidavits from the plaintiff's treating physicians or psychologists, no hospital records—in short, nothing to substantiate ... the alleged 'beating' by the NYPD . . . . All the record contains for purposes of this motion are [plaintiff's] bald and conclusory allegations which are insufficient to withstand a motion for summary judgment."); *Jeffreys v. City of New York,* 426 F.3d 549, 552 (2d Cir. 2005) ("[I]n the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiffs account.")). The Court therefore finds that summary judgment is appropriate on Plaintiff's excessive force claims with respect to the Second Strike.

Accordingly, Plaintiff's excessive force claims are dismissed.

## II.  Deliberate Indifference to Medical Needs

The Court next turns to Plaintiff's claim that Officer Fiore, Paramedic Hamblin, and Lieutenant Farina were deliberately indifferent to his medical needs. "When such claims arise in the course of pretrial arrest and detainment, [the Court] evaluate[s] them under the Due Process Clause of the Fourteenth Amendment . . . ." *Mills v. Fenger*, 216 F. App'x 7, 10 (2d Cir. 2006) (citing *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)). To withstand summary judgment on a claim for deliberate indifference to medical needs, a "plaintiff must demonstrate that there is a

genuine issue of material fact as to (a) an objective component—that the plaintiff sustained a "sufficiently serious" injury, and (b) a subjective component—that the defendant possessed a sufficiently culpable state of mind." *Elliot v. Cty. of Monroe*, 115 F. App'x 497, 498–99 (2d Cir. 2004) (internal quotations omitted). "The objective component requires that 'the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists.'" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted). The subjective component is satisfied if a reasonable juror could conclude that the state employee "knew of and disregarded an excessive risk to [Plaintiff's] health or safety and that [the state employee] was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (internal quotation marks and citations omitted).

Here, the Court finds that Plaintiff's evidence does not support a claim of deliberate indifference against Officer Fiore, Paramedic Hamblin, and Lieutenant Farina. The record reflects that Plaintiff's medical injuries consisted of bruising at his right elbow. (Defs.' 56.1 ¶ 50; Defendants' Exhibit E.) As a practical matter, a bruise is not the type of medical affliction contemplated by a Fourteenth Amendment claim. *See Thomas v. Nassau Cty. Corr. Ctr.*, 288 F. Supp. 2d 333, 338 (E.D.N.Y. 2003) (injured hand is "not a serious enough condition to satisfy the first prong of the test") (collecting cases).

Even if the Court were to conclude that Plaintiff had succeeded in demonstrating he suffered from a sufficiently serious medical condition, his claim also fails on the subjective prong. Plaintiff fails to point to evidence supporting his claim that Officer Fiore, Paramedic Hamblin, and Lieutenant Farina disregarded any risk—let alone an excessive risk—to his health

or safety. Nor does Plaintiff marshal evidence that Officer Fiore, Paramedic Hamblin, and Lieutenant Farina were aware of facts from which they could infer that a substantial risk of serious harm existed and in fact drew that inference. Instead, the evidence reflects that Paramedic Hamblin examined Plaintiff; spoke with Plaintiff about his medical complaints; confirmed Plaintiff did not have a life threatening medical condition; and relieved some of Plaintiff's pain by repositioning Plaintiff's handcuffs. (Defs. 56.1 ¶¶ 39(b)–41.) Additionally, Paramedic Hamblin conferred with Lieutenant Farina and determined that transporting Plaintiff to the hospital via a police car rather than an ambulance would not affect Plaintiff's injuries. (*Id.* 47.)[3] Thus, the evidence does not support the contention that Plaintiff was suffering from obvious, serious medical injuries.

"Most importantly, Plaintiff fails to state a constitutional claim because he received medical treatment promptly after he complained of pain." *Santiago v. City of New York*, No. 98-cv-6543 (RPP), 2000 WL 1532950, at *6 (S.D.N.Y. Oct. 17, 2000) (citing *Rivera v. State of New York,* No. 96-cv-7697(RWS), 1999 WL 13240 (S.D.N.Y. Jan. 12, 1999) (holding that detainee failed to state a constitutional claim when he was brought to [a] medical clinic less than one hour after his injury was reported and brought to the hospital less than two hours after the medical clinic referred him there)). In this case, Plaintiff was transported to White Plains Hospital approximately 30 minutes after he was apprehended by officers on the sidewalk. (Defs.' 56.1 ¶ 48.) Nearly immediate medical attention of this nature cannot support a claim for deliberate indifference. *See Santiago*, 2000 WL 1532950, at *6. The Court therefore grants summary

---

[3] The only reference to Officer Fiore in the evidentiary record is that he observed Plaintiff handcuffed surrounded by various police officers from the Town of Greenburgh and the City of White Plains. (Defs.' 56.1 ¶ 43.) The record is utterly devoid of any evidence to suggest that Officer Fiore was aware of a risk to Plaintiff and disregarded such risk.

judgment in favor of Defendants with respect to Plaintiff's claim for deliberate indifference to his medical needs.

## III.    Supervisory Liability

Plaintiff's next claim is for supervisory liability as against Lieutenant Farina. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); citing *Glick,* 481 F.2d at 1034 ("The rule in this circuit is that when monetary damages are sought under § 1983, the general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required."), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). "The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[4]

---

[4] Following the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), courts in this Circuit have disagreed as to whether all five methods of demonstrating personal involvement, as announced in *Colon*, remain viable. *Compare Rivera v. Metro Transit Auth.*, 750 F. Supp. 2d 456, 462 (S.D.N.Y. 2010) and *Bellamy v. Mt. Vernon Hosp.*, No. 07-cv-1801, 2009 WL 1835939, at *4 (S.D.N.Y. June 26, 2009) (determining that only the first and partially third *Colon* categories survived *Iqbal*) *with Delgado v. Bezio*, No. 09-cv-6899, 2011 WL 1842294, at *9 (S.D.N.Y. May 9, 2011) and *Qasem v. Toro*, 737 F. Supp. 2d 147, 151 (S.D.N.Y. 20120) (holding all five *Colon*

Lieutenant Farina's personal involvement with Plaintiff's medical care was limited to his role in discussing Plaintiff's method of transportation to the hospital with Paramedic Hamblin. (Defs.' 56.1 ¶ 47.)  Having already concluded that Plaintiff's claim for deliberate indifference to medical needs as asserted against Lieutenant Farina cannot withstand summary judgment, the Court accordingly grants summary judgment in favor of Defendants on Plaintiff's supervisory liability claim.

## IV.     Common Law Negligence

Plaintiff's final claim is a common law negligence claim asserted against Officer Jakasal and Officer Ellrodt.  Defendants assert that should this Court dismiss Plaintiff's federal claims, it should decline to exercise jurisdiction over this supplemental state law claim.  (Defs.' Mot. at 24–25.)  "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Dilaura v. Power Auth. Of N.Y.,* 982 F.2d 73, 80 (2d Cir.1992) (internal quotations and citations omitted).

---

categories apply post-*Iqbal*).  In any event, even assuming all five *Colon* categories remain valid, Plaintiff's claim still fails.

Absent contrary authority or a persuasive argument from Plaintiff, which might compel the Court to retain jurisdiction despite the elimination of all federal claims, the Court dismisses the negligence claim as against Officer Jakasal and Officer Ellrodt, without prejudice to any right Plaintiff may have to renew those claims in state court if timely.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk is directed to terminate the motion at ECF No. 51 and close the case.

Dated: January 14, 2016  
White Plains, New York

SO ORDERED:

_____
NELSON S.ROMÁN  
United States District Judge